THE BOROUGH OF WOOD-RIDGE, BERGEN COUNTY, PETI-
TIONER-APPELLANT, v. BERGEN COUNTY BOARD OF
TAXATION AND DIVISION OF TAX APPEALS, IN THE
DEPARTMENT OF THE TREASURY, STATE OF NEW
JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 15, 1970—Decided July 17, 1970.

Before Judges KILKENNY, LABRECQUE and LEONARD.

*Messrs. Saul A. Wolfe* and *George D. Malhiot* argued the cause for appellant (*Messrs. Malhiot & Genton,* attorneys; *Messrs. Gary N. Skoloff* and *Wolfe* on the brief).

*Mr. Herbert K. Glickman,* Deputy Attorney General, argued the cause for respondents (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

LABRECQUE, J. A. D. The Borough of Wood-Ridge (borough) appeals from a judgment of the Division of Tax Appeals (Division) affirming the 1969 equalization table adopted by the Bergen County Board of Taxation (county board).

Prior to the preparation of the 1969 equalization table Wood-Ridge had undergone a revaluation program. In arriving at its ratio for the year 1969 the county board utilized the "page 8 formula" suggested by the Director of the Division of Taxation (Director) for use in the case of revalued districts. See *In re Millburn,* 110 *N. J. Super.* 330 (App. Div. 1970). In the computation of the average assessment ratio for a revalued district under that formula, the true value of real property for the revalued district, as set forth in the Director's table of equalized valuations for school aid for the prior year, is used. (Here it was based upon the aggregate assessed ratables as of January 1, 1968.) To this is added the value of additional and new ratables, such as new construction and improvements, and property transferred from exempt to taxable. After deducting the value of ratables lost by fire, demolition, and transfers from taxable to exempt, the remaining total, designated as "net true value at beginning of the new year," is then divided into the aggregate of the assessments produced by the revaluation. The resulting figure is utilized as the ratio of that district's assessments as compared to the true value of its ratables (the ratio).

In preparing the 1969 equalization table in January 1969 the county board assigned to Wood-Ridge a preliminary ratio of 98.02%. On February 18 this was revised to 89.12% Following a hearing the county board promulgated the 1969

table, in which its ratio was fixed at 89.12%. On appeal to the Division the table was affirmed.

The main thrust of the borough's argument is directed to the refusal of the county board, in arriving at its "net true value," to give recognition to the fact that in 1969 it had suffered a loss in ratables, in the case of one taxpayer alone, of $5,562,300. The loss in question resulted from judgments reducing the assessed valuations for 1966, 1967 and 1968 on property of the Curtiss-Wright Corporation, the borough's largest taxpayer, from $27,652,300 to $22,000,000 on appeals which had sought a reduction to $12,957,700. The appeals were settled in the Division for 1966 and 1967 and in the county board for 1968. Additional appeals for 1965 were withdrawn. Prior to settlement Curtiss-Wright had been withholding $45,000 per quarter of its billed taxes for the years 1966, 1967 and 1968 pending the outcome of its appeals. The values for 1966, 1967 and 1968 were substantially similar. It was undisputed that Curtiss-Wright's total ratables in Wood-Ridge represented more than 40% of the borough's tax roll. The failure to allow credit for the reductions allegedly brought about a difference of 7% in its ratio.

At the conclusion of the hearing in the Division the judge expressed himself as inclined to agree with the borough, but reserved decision. In his opinion filed some two months later he concluded that "The municipality has failed to overcome the presumption that the County Board's Equalization Table was correct," thus affirming the county board's ratio.

The Borough argues that the county Board failed to follow the statutory mandate to use its best judgment and information, and its overall obligation to treat it with fairness and equality in determining its assessment ratio. Respondent urges that the use of the page 8 formula was proper as having been approved in our prior decision in *In re Millburn, supra.*

While the county equalization table prepared pursuant to *N. J. S. A.* 54:3–17 somewhat resembles the table of equalized valuations which the Director is required to promulgate

on or before October 1 of each year for purposes of state school aid, *N. J. S. A.* 54:1–35.1, the county equalization table is for the purpose of apportioning the cost of county government among the various taxing districts, while the state school aid table is utilized in the distribution of school aid to the various school districts throughout the State entitled to share therein. Thus, any increase in the ratio of the taxing district results in a reduction in the amount that district must contribute to the cost of county government, and the difference must be made up by the remaining districts. In the case of state school aid, on the contrary, a reduction or increase in the amount payable to the school district does not affect the amount payable to other districts. In practice, many county boards follow the Director's table as accurately reflecting the equalization ratios for the following year. See *Passaic v. Passaic County Bd. of Taxation,* 18 *N. J.* 371 (1955). The practice is not universal, however. See *Woodbridge v. Middlesex County Bd. of Taxation,* 96 *N. J. Super.* 532 (App. Div. 1967).

The purpose of the equalization process is to minimize as far as possible the unfair distribution of the county tax burden which is one result of varying assessment ratios among the municipalities in the county. No specific method of achieving that objective has been prescribed by the Legislature, its sole direction being that the board is to apply "its best knowledge and information" to the task. In consequence it has been held that a county board may in a proper case adopt the ratios promulgated by the Director's table of equalized valuations, or may arrive at its own ratios using a method varying somewhat from that used by the Director. *Woodbridge v. Middlesex County Bd. of Taxation, supra.* In the case of revalued districts, use of the Director's page 8 formula has been approved. *In re Millburn, supra.*

However, the approval accorded the use of the Director's table of equalized valuations does not extend to all situations. As was said by Justice Francis in *Kearny v. Div. of Tax Appeals,* 35 *N. J.* 299, 304 (1961), referring to the use

of the Director's table, "[S]uch a course would not be warranted in the face of adequate evidence offered by a complaining municipality to demonstrate that the ratio ascribed to it is incorrect or plainly unjust."

In *Kingsley v. Div. of Tax Appeals,* 40 *N. J.* 338 (1963), involving appeals from both the Director's table and the county equalization table, Justice Francis again wrote:

Equity and justice to a particular municipality and its taxpayers may require occasionally a somewhat more specific study of a particular sale or sales by both Director and County Tax Board. * * * Strict adherence to a general rule, which superficially may appear to warrant assigning such sale or sales to a general category of transactions listed as unusable by the Director, may do a serious injustice both in distribution of school aid and in allocation of the municipality's share of the county tax burden [at 345]

In that case the exclusion of three sales had had a serious and inequitable impact on the tax assessment structure of the municipality. The same cautionary rule was applied to the ascertainment of the "common level" in an individual appeal in *In re Appeals of Kents 2124 Atlantic Ave., Inc.,* 34 *N. J.* 21, 30 (1961). See also *Passaic v. Passaic County Board of Taxation,* 27 *N. J.* 467, 472 (1958). In *In re Appeal of Clifton,* 85 *N .J. Super.* 437 (App. Div. 1964), certif. den. 44 *N. J.* 410 (1965), we held:

The very nature of the formula used in reaching a ratio of assessed to true value would seem to call for an adjustment and correction when specific facts are revealed to a county board, which facts, when given proper effect, demonstrate that the share of county tax burden imposed upon a municipality * * * is *dramatically or substantially excessive.* [85 *N. J. Super.* at 445; emphasis added]

In that case the county board declined to follow the method utilized by the Director, but instead used its own method to determine the ratio produced by the sale of one of the city's largest ratables.

The rationale which underlies the foregoing cases is equally applicable to the use of the page 8 formula in arriv-

ing at equalization ratios for taxing districts which have undergone revaluation programs. Fairness and equality are essential ingredients of the equalization process. *Id.* at 446. To the accomplishment of that end it is the board's duty "to seek all enlightenment that will help it so far as possible to avoid errors in its ultimate determination of assessment ratios." *Kearny v. Div. of Tax Appeals, supra,* 35 *N. J.* at 311. When a taxing district presents evidence which, when given its proper effect, demonstrates that its share of the county tax burden has been made dramatically or substantially excessive, *In re Appeal of Clifton, supra,* the duty devolves upon the county board to make a more detailed and specific study of such evidence and factually determine the merits of the contention made by the district.

 Here it is clear that the facts before the county board called for such a study. Initially, we are confronted with the incongruity of a ratio after revaluation (presumably made at full value by a valuation expert found to be qualified) being reduced from 100% to 89% in the first year it takes effect. At that rate the need for another revaluation was already in the offing! The seeming injustice thus demonstrated was compounded by the admitted fact that, by judgments on appeals involving one taxpayer alone, the aggregate. assessments for the prior year had been reduced by $5,652,300.[1] The fact that the reductions involved consent judgments did not preclude their consideration and use by the county board. *In re Appeal of Clifton, supra,* 85 *N. J. Super.* at 445. At the very least the board was on notice that reductions similar to those granted by it for 1968 had been approved by the Division for 1966 and 1967, under a rule which required verification by qualified experts as to the valuations involved. *N. J. S. A.* 54:2-42. *In re Millburn, supra,* afforded no justification for the board's failure to pass upon the borough's claim. Here it was dealing with a

[1] Applying the ratio of 72.35% applicable to the prior year's valuations to the aggregate assessments cancelled would produce an aggregate valuation loss of $7,812,439.

contention which allegedly would have increased the Borough's ratio from 89% to 96%, whereas in *Millburn* the difference was that between 104.34% and 105.20%, less than 1%. Here, too, the erosion in valuations was precipitate, as contrasted with the expected year-to-year reductions resulting from appeals.

When the foregoing facts were made manifest at the trial, it became the obligation of the Division to undertake, subject to the provisions of *N. J. S. A.* 54:3–37, the duty imposed upon the county board in the first place. *Passaic v. Passaic County Bd. of Taxation, supra,* 18 *N. J.* at 393; *New Brunswick v. Middlesex County Equal. Table,* 25 *N. J. Misc.* 353, 53 *A.* 2d 641 (Div. Tax App. 1947). Its omission to dispose of the contentions raised by the appeal, and thereafter to promulgate a new table based upon its findings and conclusions, mandates a remand to the end that it may do so. It is in a better position than are we to determine whether the stipulated reductions in assessments represented decreases in value or corrections of overassessments, or resulted from a mere desire to retain an industry. See *Berkeley Heights Tp. v. Div., etc., Dept of Treasury, etc.,* 68 *N. J. Super.* 364, 371 (App. Div. 1961).

The judgment of the Division of Tax Appeals is accordingly reversed and the matter remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.